My name is Daniel Janowski, and I represent the appellant, Mrs. Mark Clark. My client was charged and convicted of burglary in Madison County. And as this court's aware, there's three elements for burglary. First, that the defendant knowingly enters a motor vehicle. Secondly, that he claims to have authority. And thirdly, that he does so with the intention to commit theft. And we're here today to challenge the sufficiency of the evidence because there was no evidence submitted in this case to show that my client knowingly entered the motor vehicle in which the burglary had occurred. Now, due to the kind of peculiar nature of burglary, human nature, and the evidence that usually goes along with burglary cases, when we review this case, we look at what's termed as the Halphy test from the People v. Halphy case from Illinois Supreme Court in 1981. In that case, the Illinois Supreme Court uses kind of guidance from the U.S. Supreme Court to hold that a fact finder may presume that an individual in possession of recently stolen property is the one who committed burglary if, and there's three elements to that. What the state had shown in my case is that my client had recent possession of stolen property, and however, that's where they stop. And those three elements are, first, that there's a rational connection between recent possession of stolen property and participation in burglary. Second, that the defendant's guilt of burglary, quote, more likely than not flows from his recent, unexplained and exclusive possession of the proceeds. And finally, that there was corroborating evidence. I'm not going to argue that the first element of that is missing here, that there's a rational connection between his possession and participation. However, first off, on the second element, that his guilt of burglary is more likely than not flows from his possession of the proceeds, I believe that that's suspect here, due to what I believe to be the outward fact in this case, that the victim of the burglary, on his way home from Collinsville High School to a basketball game in the evening, had seen about a quarter to half a mile from his home two individuals standing at a dumpster on the side of a railroad road in Madison County. One of the only real descriptions that Mr. Berardini, the victim in this matter, had offered during his testimony was that he saw one of the men wearing a gray sweatshirt, and it matches the description of my client. However, he did see a second individual. So I offer this quote that it's not necessarily more likely than not flows from my client, his guilt from the burglary flows from his exclusive possession of the proceeds, but probably equally likely that it could have been either him or the other individual. Or both. Or both. What if it's both? Does that prong still be satisfied? I... I mean, do you have to show, do you have to exclude the other man under the second prong? I don't think you necessarily have to exclude. Obviously, these are three elements. It's interesting that there's three elements here. These aren't on the jury form. These aren't jury instructions. This is kind of the analysis that's always done after the fact to say, oh, I, you know, did the jury just determine that since he was, my client was the one that was found with the property shortly after the burglary, that he's the one who did it. And I don't necessarily... No, but I mean, don't you look at proximity? You yourself said it was a quarter to a half mile. The victim didn't even know he'd been burglarized or theft. Theft did occur. That's right. And as those things time and location, the closer they get to the incident of the burglary, the higher the likelihood is upon that statement. The probability, right? Yeah. And so, however, on the third prong, corroborating evidence of my client's guilt, I think that that's primarily what this case is about, in that there wasn't corroborating evidence here other than the proximity to the scene of the crime. Had there been some type of video evidence or eyewitness testimony to see my client breaking into the car, we wouldn't even be doing this Housby test. However, there was no footprints, there were no fingerprints, no DNA evidence, nothing else that corroborates his involvement in this incident. And what about the testimony of the victim himself? That can't be corroborating or can it be? I don't think in here that it would be corroborating. And the reason is I said in my brief the case of People v. Naval. It's a first district case from 06. And in there, the first district had used proximity in both time and location. The state had used both proximity and time and location to prove, to give corroboration to it. And then the first district said, no, that's not enough. That case, the apartment owner had come home, had realized his apartment had been burglarized. There was a DVD player and a TV that had been disconnected. It was still in the apartment. He ran to the fire escape or the balcony on his apartment, looked outside, saw a man standing about 200 feet away from the apartment building with a pillowcase from his bed with property in it. So he runs, he grabs a pipe, runs downstairs and confronts the man. That was the evidence there. So he was there within approximately a few minutes if the trial court had found that due to the fact that the TV and the DVD player had been disconnected, that the burglar had made a quick escape. So we're probably hopefully looking at a few minutes there. And then secondly, that he was 200 feet away from the apartment. So there they said there's no other corroboration. There's no fingerprints that have been recovered tying the defendant to the scene of the crime. So therefore, that element had been satisfied. Another interesting part about that case. The element had been satisfied. Had not been. In that case, they vacated the conviction. The conviction in People v. Natal? People v. Natal, N-A-T-A-L. And also in that case, the defendant had testified and had said, well, the burglar had given me this pillowcase full of property and had ran away. And there the trial court found that to be incredible. But since there was no other corroboration, the trial court said that that wasn't enough and they vacated the conviction. And so therefore, I don't believe that here's the corroboration, the third element of the house, because it's been satisfied. That was Natal. And what about the circumstantial evidence? Would that be corroboration? I mean, it doesn't have to be correct evidence. It probably wouldn't be correct. Exactly. I believe that the circumstantial evidence in this case was his proximity in time and location. What else was there circumstantially? I don't believe it. He had the property. He had the property. That would be evidence of theft. Exactly. That would be it. And what's your argument? The evidence is circumstantial as to a theft and not a burglary. Well, circumstantial to his maybe receipt of stolen property versus the actual burglary. But burglary, you have to show entry. Entry. And that's the element that we believe that hasn't been satisfied here yet. The Natal case, I believe, the last line of the case I think is particularly instructive here. And it says proximity in time and location with items of minimal value. In this case, we're talking about the most valuable item that my client was found with was a package of cigarettes. And he had some insurance registration papers from the vehicle. He had a parking pass to the railroad station in Grant City. Those were the things that he had found in the house. The most valuable thing was the cigarettes. In the Natal case, they said proximity in time and location with items of minimal value is not enough to corroborate. You need something else to tie you to the entry. There's something about, you mentioned cigarettes. Yeah. And testimony, they weren't wet. Yes. And it was a rainy night. And so, you know, is there an argument that that's corroboration that, you know, actually, you know, there was an entry into the vehicle because he, you know, he testified. I guess your client testified, well, I found them on the ground. Yet the cigarettes were wet on a rainy night. Well, my client didn't testify, actually. The police officer had testified that at the time of the arrest, my client told him, a friend gave it to me. That was his testimony. My client represented himself at trial and on cross-examination said, didn't I, you know, didn't I ask you, or didn't I ask you, tell you that I found them on the ground? So that fact isn't necessarily in evidence here. So his question, the officer said, no, you told me that a friend gave it to you. And there was also testimony that he was highly intoxicated at that time, you know, and that was the reason for the response that he had been given. But in light of what Justice Overstreet asked you, if your client did find them on the ground, they would have been wet. Yes, they would have. So that doesn't really help in that question. Well, I think that the testimony of him receiving it from a friend would, you know, there's a sentiment there. Yeah, but he asked, didn't I tell you they were found on the ground? That was the question. There you go, representing yourself. Exactly. However, it was not a statement made, you know, during his testimony. It wasn't evidence. Exactly. So the jury heard all of those explanations. Yeah, but you know what the jury thought. Yeah, I'm guilty. So that's what I think. So if there are any further questions, I'll ask for a rebuttal. Thank you, sir. Patrick, I mean, again, your Honor is my physical counsel. My name is Patrick Daly.  Howie is a, you know, sort of the beginning of this idea that we can't convict people of burglary just based upon simple possession of recently or possession of stolen material. Howie actually has as a sort of source the presumptions that have been applied of force that the possession equals burglary. What Howie says is that, you know, we have to look at the circumstantial evidence that we have. The evidence has to be viewed in totality to determine if there's more than simply, you know, the possession that constitutes the state's evidence. Here, there wasn't. First of all, I'll start with this. There was undoubtedly evidence of a burglary of a motor vehicle. The victim testified. If they had not found a registration, what evidence would there have been? Well, I don't think there would have been a whole lot because that was the only way they tied the evidence to the victim. Right. That's how it happens sometimes. Yeah. I mean, I don't think, unless he's known a lot, they have lucky strikes figures in the camel pack. I don't know. 1039 finds a particular individual. Nonetheless, obviously, that time. Does the entire conviction rest on registration? Because that's really what led to the burglary in my, I agree with you. I mean, that's. It started the chain of events, if you will, from, you know, we have this individual who has all these items and they see this, and it's not the person that they stop for the pedestrian check, whatever that is. And they, you know, so they see these things that are not items that would be normally in this person's, or should be in this person's possession. And that's when they wind up investigating and speaking to the man. Especially when his name is different. Yeah, exactly. It was supposed to be in the glove compartment. Correct. Right. And when they went out and looked at his vehicle, which he indicated he had secured, everything was locked, everything was in there in order, looked through, the center console had been opened, things were all over the place, the glove box had been rightfully identified, and this is cigarettes. I think that's what he mentioned. How do you square this case? What more is there in this case that there wasn't in Natal? Well, we have to be, there's a couple of distinguishing factors in Natal here. Number one, when you read that decision here, you'll note that the court emphasizes the fact that the trial court found the defendant guilty based upon case law which had held that the possession of stolen merchandise equaled evidence of, or, you know, basically dispositive evidence of a burglary. The court may have mentioned the fact that they were engaged in a house-meet consideration. I would also note there that fingerprints were taken of the items there, I believe, and the fingerprints came back to someone other than the defendant, which was sort of affirmative proof, if you will, of disconnecting the defendant from the act of the burglary. Now, there's no fingerprints in this case. I grant you that. It's a little bit different to say there's fingerprints as an exclusion rather than none at all, but it was a wet night. Maybe a testifier would have been difficult to do fingerprints on the exterior, and I believe there's testimony that the interior was sort of dusty and not probably amenable to. Yeah, but excuses wouldn't be sufficient because the burden of proof is on the estate. True. Well, I think I just go to also look at the Cabone case of the state tax. Cabone, which does discuss house-meet in the context of the evidence of that case, was the genesis of this idea, which counsel referred to, about where you draw closer in time to proximity and temporal and distance, if you will, sort of enhances the corroborative effect of the possession versus the recent burglary of the vehicle. Interestingly enough, in that case, we're talking about distance of several miles in several hours, whereas here we're talking about time frame within an hour, and the defendant was found less than a half mile away alone on a street in a neighborhood that's off a beaten path. It doesn't have sidewalks. Obviously, it's an unusual circumstance in this particular neighborhood, apparently, for a person to be disturbed while walking around. And when was it that the owner said he had gotten home? Like, what was the moment? The pedestrian stop, I believe, was at 930. The pedestrian stop was sometime between that and 1030, because I think it was 1030 is when the police went to his house. So it was about an hour. So all this occurred within an hour's time period, correct? Notably, that he did see two individuals. Just in case you ask an interesting question, I'll get to that in a second, that the two individuals were observed by a dumpster, about a quarter mile, maybe a little bit more away. One of them was wearing a gray sweatshirt. There wasn't exactly a positive identification of the defendant, but when you look at what the defendant was wearing, which was a gray sweatshirt, in the time frame in which this occurred, it's certainly circumstantial evidence of the defendant being there, present, right at the time this verbally occurred. Furthermore, the question that the justice asked with regards to what if they both did it, the problem is subscribing to that particular, you know, to say, well, yeah, that's not a problem, of course, because the burglary is committed by an individual. We don't know necessarily what one person did and what one person didn't, unless we're getting into difficult issues about accountability. What we have here is this. We have this defendant who's in possession of these items. We have this defendant who is alone. We have a defendant who, now, it was not in evidence, if you will, the sort of unwise question about cross-examination, about what the officer, the defendant said to the officer, but the officer testified, and therefore it's currently in evidence, that he said that he got it from a friend. But who's your friend? Well, I don't know. So, you know, I mean, and that's one of the distinguishing characteristics, I think, that you see in, you know, when we talk about the corroboration and the rational connection is one of the factors, is where our defendant provides an explanation for the possession of the items which is simply implausible under the circumstances of the case, and that a guy would be somehow transferred within the span of an hour, alone on the street in an isolated neighborhood when it's raining outside, dry items from a friend who has no idea who he is. It's not going to be a stretch for a jury to go back into deliberation and say, yeah, okay. So I think that when you look at the totality of the circumstances here. What about the entry? I mean, one of the elements that the State must prove is the entry with the intent. It's a specific intent crime. The specific intent is proven by circumstantial evidence, Your Honor, and the circumstantial evidence here was the victim's testimony that he had driven a vehicle, that all the items were in their respective, and the car was closed. But the mens rea goes to the defendant. What's that? The mens rea of the event goes to the defendant. That's right. Not to what the victim did. No, but the mens rea is established by the fact that the vehicle had been secure, if you will, with everything on the inside. The whole house is, you know, you don't have a broken window in a house, right? Breaking is not a crime. No, no, I'm just saying that a car, when you're talking about the victim putting it in a, you know, things in the glove box, everything was organized. It's kind of like a house. When you walk out the door, there's some free zone, and it was organized. Right. Okay, so what about the defendant in possession of stolen property where the elements don't include entering? Well, I think that circumstantial entry had to have happened. These items, by the victim's testimony, were in a closed vehicle in their respective states. They didn't hop out of the car on their own. Exactly, but that's the trouble with the circumstantial evidence. How far can we stretch it under NATO? Well, I mean, if you can't draw a connection between items that were taken from the vehicle and the defendant's possession of those items, along with the other circumstances, which we discussed here, it's almost literally impossible for the state to prove its case. I mean, I don't think that the structure of Germany... As to burglary, not as to other offenses. Well, that's the only thing that was convicted of. Right. So, I mean, it's... Was he charged with unlawful possession of stolen property? No, he was charged with entry with intent to commit a theft. Right, not theft of property. Well, yeah. Well, that would have been a misdemeanor. Yes, it would have been a misdemeanor, right. Because he didn't have cigarettes or not wearing... No, no, no, the other paperwork, right, right. But actually, burglary doesn't even need to be proven by a theft. It just has to be entry with intent. If he opened the door and was about to reach in there and take stuff, and once he makes that, you know, penetrates the exterior or interior of the vehicle, he's guilty of burglary. And here we have much more than that. Obviously, when he was right foot through, the items are all over the place. You know, and I think that the jury can connect the dots here with that, with the evidence that was presented in the show. He was there, temporal time, proximity and distance, implausible story, and the identification of a person wearing clothing similar to the defendant's at or near the location where it occurred. I think it would be at A plus B plus C equals G, which is guilty. And he didn't know his friend. He didn't know his friend, yeah. I knew all my friends, actually. And there's a lot of those who don't know their friends. Does the court have any further questions? Okay. We'll stay with this courtroom. Thank you. Thank you. Rebuttal. I guess I just have two quick points on rebuttal. The first is, say it makes reference to this Haven case that talks about, you know, another close proximity of 4.3 miles, I believe it was, within a few hours of the burglary. There the court had found that the corroboration came from the defendant testifying at trial that he had lied to the police officer whenever he was stopped. He had been stopped. He had a jewelry box. And this was a case from the 80s. So, you know, you've got like a VCR, which was valuable at that time, aircraft radio, a calling card with somebody else's name on it. And he said, Officer, this is my girlfriend's stuff. And then he had testified at trial. Actually, how he lied to the officer in the court at that time said, well, that's corroborating to his, you know, state of mind of his guilt. And so, therefore, that's going to be where we hang our hat on the corroboration in that case. And so I think that's an important distinction between our two cases here. And finally, I'd just like to reemphasize the fact that, sure, well, I think we can use these, you know, inferences, the evidence that was submitted that a burglary had occurred, a theft had occurred. The problem is that the burden is on the state to prove that it was my client who did it, which I think is lacking here due to the fact that there's no corroboration from the evidence. So any final questions? Thank you, counsel. Thank you, Your Honors. Appreciate your arguments. I think it's a matter of advisement to make a decision in due course.